**U.S. BANKRUPTCY COURT**
District of South Carolina

Case Number: **18-04955-jw**

**ORDER**

The relief set forth on the following pages, for a total of 19 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/04/2022**



*signature: John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 02/04/2022

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Gertrude Coretta Fennell Hamilton,<br><br>                               Debtor. | C/A No. 18-04955-JW<br><br>Chapter 13 |

This matter comes before the Court upon a motion for new trial ("Motion to Reconsider") under Rule 9023 of the Federal Rules of Bankruptcy Procedure, which makes Rule 59 of the Federal Rules of Civil Procedure applicable to bankruptcy cases and proceedings, filed by Debtor Gertrude Coretta Fennell Hamilton, acting *pro se*, in response to an order granting relief from the automatic stay to PHH Mortgage Corporation ("Creditor"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Based on materials presented by the parties, the Court makes the following findings of facts and conclusions of law.

## BACKGROUND

*Loan Origination*

On January 16, 2008, Debtor obtained a mortgage loan ("Mortgage Loan") from Sidus Financial, LLC to borrow a principal balance of $172,500.00. According to the note and mortgage that Debtor signed, the Mortgage Loan originated from the Federal Housing Authority's ("FHA") consumer lending program because loan documents reflect that Debtor signed an "FHA Multistate Fixed Rate Note—12/01." To secure her repayment obligations, Debtor also executed an "FHA South Carolina Mortgage" that encumbered Debtor's real property at 99 Elmwood Street, Walterboro, South Carolina 29488 ("Property"). The mortgage is a first-priority lien encumbering the Property.

Page **1** of **18**

Under the Mortgage Loan, Debtor must repay the principal balance along with 5.75% interest per annum over a period of 30 years through monthly payments of $1,006.95 per month. Additionally, Debtor also agreed to pay for monthly escrow payments to cover the costs of taxes and hazard loss insurance premiums for the Property. During the repayment term and after a series of transfers, the Mortgage Loan was assigned and transferred to Ocwen Loan Servicing, LLC ("Ocwen").

*Debtor's Default and the State Court Foreclosure Judgment*

Around March 1, 2017, Debtor fell behind on her repayment obligations. Because of Debtor's default, Ocwen filed a foreclosure action against Debtor on April 16, 2018, with the Court of Common Pleas for Colleton County, South Carolina ("State Court"). During the foreclosure action, the State Court entered a judgment of foreclosure and sale against Debtor on July 20, 2018. In the judgment, the State Court established the total amount due for the Mortgage Loan as $163,639.81.[1] As part of the foreclosure process, the State Court scheduled a judicial sale for the Property on October 1, 2018.[2]

*History of Events Occurring in Debtor's Chapter 13 Case before the COVID-19 Pandemic*

Before the judicial sale could occur, Debtor filed her Chapter 13 case with this Court on September 28, 2018. In her bankruptcy schedules, Debtor valued the Property at $150,000, and she cited a tax assessed value for the Property of $155,000.[3] On October 19, 2018, Debtor filed a Chapter 13 plan that proposed loss mitigation treatment for the Mortgage Loan.

---

[1] The judgment amount is comprised of the following: Total Principal as of May 1, 2017—$146,417.86; Accrued Interest from Apr. 1, 2017, to July 19, 2018—$11,225.44; Escrow Adjustments—$532.86; Late Charges—$4,106.34; Property Inspection Fees—$233.00; Title Fee Expenses—$250.00; Suspense Account Balance—($2,310.27); Foreclosure Costs—$684.58; Attorney's Fees—$2,500

[2] Materials submitted by the Debtor reflect that on September 18, 2018, Ocwen generated a mortgage statement reflecting $17,783.59 due by October 16, 2018, to cure the existing arrearage and bring the loan current through the October 2018 payment. The mortgage statement also disclosed unapplied funds in the amount of $2,310.27.

[3] Due to the COVID-19 pandemic's effect on supply and demand for real property in the Charleston S.C. area, the Court is aware that the market sales value of real property has significantly increased.

Ocwen filed a proof of claim for the Mortgage Loan on November 27, 2018. The proof of claim reflected that the balance of the Mortgage Loan was $161,891.84 as of the petition date.[4] Ocwen disclosed a monthly payment of $1,172.17 on the proof of claim, which was comprised of the principal and interest payment of $1,006.95 and the monthly escrow payment of $165.22.

On January 17, 2019, Ocwen filed a Notice of Mortgage Payment change to document a nominal increase in the escrow payment from $165.22 to $168.10, which made Debtor's monthly payment $1,175.05 per month. Almost two weeks later, Ocwen filed a Notice of Postpetition Fees, Expenses, and Charges in the amount of $500 for the attorney's fees that it incurred to have its bankruptcy counsel file its proof of claim.

The Court confirmed Debtor's Chapter 13 plan on February 6, 2019, which stated that she would seek "loss mitigation or a consensual loan modification (LM/MM) of the mortgage loan secured by…the [Property]." The confirmed plan further stated that Ocwen could secure relief from stay if Debtor's LM/MM request is denied or if the Debtor fails to make any trial plan payments.[5] However, Creditor has never filed the required affidavit and proposed order indicating that loss mitigation consideration has been fully considered and finalized. A year after plan confirmation, Ocwen transferred its mortgage claim to PHH Mortgage Corporation ("Creditor")

---

[4] The Mortgage Loan balance stated in the proof of claim is comprised of the following: Total Principal—$146,417.86; Accrued Interest from Apr. 1, 2017, to September 28, 2018—$12,558.46; Fees and Costs—$4,692.93; Escrow Adjustments—$532.86; and Suspense Account Balance—($2,310.27). Ocwen appears to have waived late fees when it filed its proof of claim.

[5] The plan language in the Court's form Chapter 13 plan states as follows:
> In the event that (1) the LM/MM (and necessary documentation) is not submitted or is denied or (2) Debtor(s) fail to timely make any required Trial Plan Payments, the Mortgage Creditor may, after 14 days' written notice to the Debtor(s), Debtor(s) Counsel, and the Trustee, submit an affidavit and proposed order seeking relief from the stay. However, the Mortgage Creditor may not obtain relief until its final consideration of LM/MM is concluded and reported to Debtor(s) and Debtor(s)' Counsel.

on March 9, 2019. On February 21, 2020, Creditor filed another Notice of Mortgage Payment Change to disclose an increase in monthly escrow payment from $168.10 to $168.58.

Pursuant to the confirmed plan's loss mitigation provisions, Creditor offered Debtor a loan modification, but Debtor rejected Creditor's loan modification proposal because it only decreased her monthly payment $204, extended the repayment term an additional 11 years, and required a significant balloon payment around $29,000 at the end of the repayment term. Ultimately, Debtor and Creditor could not come to an agreement on loan modification terms.

*The COVID-19 Pandemic and CARES Act*

During Debtor's bankruptcy case, the COVID-19 pandemic struck. Because of the pandemic, the President of the United States declared a national emergency ("COVID-19 Emergency") under the National Emergencies Act on March 13, 2020. Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020). Two weeks later, the CARES Act was enacted on March 27, 2020. Under the CARES Act, borrowers with a federally backed mortgage loan, such as Debtor's Mortgage Loan, were provided with the opportunity to secure forbearance relief as follows if they suffered "financial hardship" arising "directly or indirectly" from the COVID-19 Emergency:

> During the covered period, a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency may request forbearance on the Federally backed mortgage loan, regardless of delinquency status, by--
>
> (A) submitting a request to the borrower's servicer; and
>
> (B) affirming that the borrower is experiencing a financial hardship during the COVID-19 emergency.

15 U.S.C. § 9056(b)(1). Under the CARES Act, the definition of "Federally backed mortgage loan" includes any loan which is secured by a first or subordinate lien on residential real property

(including individual units of condominiums and cooperatives) designed principally for the occupancy of from 1- to 4- families that is—

> (A) insured by the Federal Housing Administration under title II of the National Housing Act (12 U.S.C. 1707 et seq.);
>
> (B) insured under section 255 of the National Housing Act (12 U.S.C. 1715z-20);
>
> (C) guaranteed under section 1715z-13a or 1715z-13b of Title 12;
>
> (D) guaranteed or insured by the Department of Veterans Affairs;
>
> (E) guaranteed or insured by the Department of Agriculture;
>
> (F) made by the Department of Agriculture; or
>
> (G) purchased or securitized by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association.

*Id.* § 9056(a)(2). The forbearance period provided under the CARES Act could initially last 180 days and may be extended an additional 180 days at the request of the borrower. The borrower could also request a shorter forbearance period. *Id.* § 9056(b)(2). Further, the CARES Act limits the assessment of fees, penalties and interest during the forbearance period as follows:

> During a period of forbearance described in this subsection, no fees, penalties, or interest beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract, shall accrue on the borrower's account.

*Id.* § 9056(b)(3).

Under the statute, mortgagees and loan servicers must provide forbearance relief upon the borrower's statement of financial hardship caused by the COVID-19 emergency as follows:

> Upon receiving a request for forbearance from a borrower under subsection (b), the servicer *shall with no additional documentation required* other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency and *with no fees, penalties, or interest* (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provide the forbearance for up to 180 days, which may be extended for an additional

Page **5** of **18**

> period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.

*Id.* § 9056(c) (emphasis added). On February 24, 2021, the President continued the COVID-19 Emergency beyond March 1, 2021. Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic, 86 Fed. Reg. 11,599 (Feb. 24, 2021).

*CARES Act Enforcement and Amendment of FHA's Servicing Guidelines*

In an executive order entered on August 8, 2020, the President clarified his intent to enforce the CARES Act and prevent evictions and foreclosures arising from financial hardships caused by the COVID-19 by stating as follows:

> [M]y Administration, to the extent reasonably necessary to prevent the spread of COVID-19, will take all lawful measures to prevent residential evictions and foreclosures resulting from financial hardships caused by COVID-19.
>
> * * * * *
>
> It is the policy of the United States to minimize, to the greatest extent possible, residential evictions and foreclosures during the ongoing COVID-19 national emergency.

Exec. Order No. 13945, 85 Fed. Reg. 49,935 (Aug. 8, 2020).

On April 1, 2020, FHA issued Mortgagee Letter 2020-06, "to inform mortgagees of Special Loss Home Retention Options available to Single Family borrowers…affected by the COVID-19 Presidentially-Declared National Emergency." FHA Mortgagee Ltr. No. 2020-06, 2020 WL 1677474, *2-*3 (April 1, 2020) *superseded in part by* FHA Single Family Housing Policy Handbook 4000.1 (Nov. 11, 2021). Under Mortgagee Letter 2020-06, the FHA incorporated a Forbearance for Borrowers Affected by the COVID-19 National Emergency ("COVID-19 Forbearance") program into the default servicing guidelines detailed in FHA's Single Family Housing Policy Handbook 4000.1. *Id.* at *2.

The COVID-19 Forbearance program initially provided forbearance relief to borrowers during March 1, 2020, through June 30, 2020. FHA Single Family Housing Policy Handbook, pt. III.A.2.o.i (Nov. 11, 2021). Through later amendments to its Policy Handbook, the FHA refined the COVID-19 Forbearance program.[6]

During the COVID-19 Emergency, FHA set forth various deadlines for borrowers to request COVID-19 Forbearance along with various forbearance periods. At the inception of the COVID-19 Forbearance program, a borrower who requested forbearance because of a financial

---

[6] FHA's servicing guidelines provide as follows for COVID-19 Forbearance:

(A) Definition

The COVID-19 Forbearance provides Borrowers who experience an adverse impact on their ability to make on-time Mortgage Payments due to the COVID-19 pandemic with a forbearance period, which allows for one or more periods of reduced or suspended payments without specific terms of repayment.

(B) Standard

Upon Borrower request, Mortgagees must offer a COVID-19 Forbearance to any Borrower that experiences an adverse impact on their ability to make on-time Mortgage Payments due to the COVID-19 pandemic, regardless of Default status.

All FHA Borrowers are eligible for a COVID-19 Forbearance, regardless of the delinquency status of the Mortgage.

The Mortgagee may utilize any available method for communicating with a Borrower regarding a COVID-19 Forbearance to meet these requirements. Acceptable methods of communication regarding a COVID-19 Forbearance include, but are not limited to, emails, text messages, fax, teleconferencing, websites, web portals, etc. If a Mortgagee sends out a general communication advising that a COVID-19 Forbearance is available, the Borrower may reply to that communication requesting a COVID-19 Forbearance via email, phone call, or any other method of communication clearly made available to the Borrower by the Mortgagee.

The term of the initial and any additional COVID-19 Forbearance period may be shortened at the Borrower's request.

The Mortgagee must waive all Late Charges, fees, and penalties, if any, as long as the Borrower is on a COVID-19 Forbearance Plan.

FHA Single Family Housing Policy Handbook 4000.1, pt. III.A.2.o.i.(A)-(B).

hardship caused by COVID-19 was eligible to receive an initial six-month forbearance period that could be extended an additional 6 months upon the borrower's request. After twelve months of forbearance, the borrower could then request additional forbearance for an additional six months by requesting additional extensions every three months. *Id.* This portion of FHA's COVID-19 Forbearance program was revised five times during the COVID-19 Emergency. *Id.* And as of September 27, 2021, FHA provided borrowers with the further ability to make an initial request for COVID-19 Forbearance after October 1, 2021. *Id.* Thus, under the current iteration of the forbearance program, FHA limited the COVID-19 Forbearance period by stating that "[n]o COVID Forbearance period may extend beyond six months after the end of the COVID-19 National Emergency or September 30, 2022, whichever is later." *Id.* Further, the period of forbearance cannot last more than 12 months.[7]

*History of Events Occurring in Debtor's Chapter 13 Case during the COVID-19 Pandemic*

On October 7, 2020, Debtor sent an email to her counsel noting that Debtor's son resumed work and paying Debtor $500 per month in rent. According to Debtor, "[b]ecause of COVID-19, [her son] could not work with the Port Authority."[8] Debtor also stated to her counsel that she wished to pursue loan modification. On February 16, 2021, Creditor filed Notice of Mortgage Payment change to disclose a decrease in the monthly escrow component of the Mortgage Loan payment from $168.58 to $157.42 for a new monthly payment of $1,164.37.

---

[7] Under the COVID-19 Forbearance program, FHA also states that "[a]ny borrower who is granted a COVID-19 Forbearance and is otherwise performing as agreed is not considered to be Delinquent for purposes of credit reporting." FHA Single Family Housing Policy Handbook 4000.1, pt. III.A.2.o.i.(C). Further, FHA ask mortgagees to comply with the FCRA's requirements and to consider "flexibilities" the mortgagees may have when taking any negative credit reporting actions against borrowers in a COVID-19 forbearance as follows:
> FHA requires Mortgagees to comply with the credit reporting requirements of the Fair Credit Reporting Act (FCRA); however, FHA encourages Mortgagees to consider the impacts of COVID-19 on Borrowers' financial situations and any flexibilities a Mortgagee may have under the FCRA when taking any negative credit reporting actions.

*Id.*
[8] Debtor's Exhibit 3, Debtor Emails dated Oct. 5, 2020, to Oct. 7, 2021.

Page **8** of **18**

On April 29, 2021, Creditor filed a motion for relief from stay based on Debtor's failure to remit adequate protection payments to Creditor for its mortgage claim. A week later, Debtor objected to Creditor's motion for relief by claiming that significant equity in the Property precluded stay relief and that Debtor was entitled to cure any post-petition payment arrearage. The Court scheduled a hearing for Creditor's motion for relief on June 3, 2021, but continued the hearing twice upon the joint request of the parties to August 26, 2021. The Court held a hearing for Creditor's motion for relief on August 26, 2021. During the hearing Debtor's counsel argued that Debtor needed a continuance to secure additional time to secure a refinance to pay off the Mortgage Loan. At the conclusion of hearing the parties consented to a third continuance of Creditor's motion for relief from stay hearing to October 21, 2021.

On August 26, 2021, Debtor also sent an email to PHH to ask why it concluded that she did not qualify for help under the CARES Act. In the email, Debtor noted that she needs rental income from her son to afford her bankruptcy reorganization and that her son was unemployed due to COVID-19.[9] Two-days before the continued hearing for the motion for relief from stay, Creditor issued a letter to Debtor on October 19, 2021, to inform her of the following:

> The Cares [sic] Act is to assist the accountholders with the Forbearance Payment Plan for 90 days, which means that during those 90 days, [Creditor] will not assess any fees or interest during the active Forbearance Plan period. Currently, there is no active COVID-19 Forbearance Plan on the account.[10]

During the continued hearing scheduled for October 21, 2021, neither counsel for Debtor nor Creditor's counsel attended the hearing in-person,[11] and no evidence was presented. Thus, the record was limited to the statements of Debtor's counsel and Creditor's counsel. Debtor's

---

[9] Debtor initially submitted the email as redacted exhibit appended to her Motion, and after the January 26, 2022, hearing, Debtor transmitted a copy of her Motion with an unredacted copy the August 26, 2021, email to the Court.
[10] Debtor's Exhibit 11, Creditor Ltr. dated Oct. 19, 2021.
[11] During the pandemic, the Court held hearings by video and telephone, often creating difficulty in the presentation of evidence.

counsel requested a continuance. Furthermore, Debtor's counsel confirmed that Debtor was delinquent on her mortgage payments. Debtor's counsel also stated that she expected Debtor to appear at the relief from stay hearing and did not know why Debtor did not appear.[12] Debtor's counsel argued that Debtor believed that she had substantial equity in the Property, but she wanted a continuance because Debtor was making progress on securing a refinance.

Creditor's counsel objected to the continuance request because the relief from stay hearing had been continued on multiple occasions. Creditor's counsel also stated that Debtor's valuation of the Property in her schedules reflected that there was no equity in the Property. Ultimately, the Court granted relief from stay and entered an order granting relief on October 29, 2021, based on the record presented at the hearings.

*Debtor's Motion to Reconsider*

In response to the stay relief order, Debtor filed a timely Motion to Reconsider under Rule 9023 of the Federal Rule of Bankruptcy Procedure on November 8, 2021. Additionally, on November 30, 2021, Debtor transmitted a letter to advise Creditor that she "would like forbearance coverage over the last 18 months, and my balance re-calculated to reflect the benefits of the CARES Act."[13] The Court held a hearing for Debtor's Motion to Reconsider on December 9, 2021. In the Motion to Reconsider, Debtor complained about Creditor purportedly rejected her attempts to make payment. Debtor also argued that she was entitled to COVID-19 Forbearance. According to the Debtor, forbearance would be helpful to her because she could collect rents from her son to help with funding payments owed to the Creditor under the Mortgage Loan. Additionally, Debtor stated that she just needed a forbearance period between three and six months

---

[12] According to Debtor, she failed to appear at the video conference hearing because of a miscommunication with her counsel regarding the time of the hearing.
[13] Debtor's Exhibit 13, Debtor Ltr. dated Nov. 30, 2021.

to meet the payment obligations imposed by the Mortgage Loan and treat the Mortgage Loan under the Plan. Debtor further explained that she missed the previous hearing for Creditor's motion for relief from stay because her counsel advised her of the wrong time for the hearing and that she appeared online for the relief from stay the hearing when it was concluding.

Debtor also stated that she would be able to qualify for a loan to refinance the Mortgage Loan if a forbearance was in place. Apparently, Debtor believes that forbearance should preclude relief from stay and therefore prevent her creditor rating from deteriorating because of issuance of a stay relief order. Debtor also admitted that she was unable to refinance the Mortgage Loan because of the obligation to pay student loans, which were not forgiven as she had planned. Nevertheless, Debtor stated that she is paying her student loans through her bankruptcy and that there is sufficient equity in the Property to secure a refinance. Debtor also cited to an upcoming mediation in a personal injury case, which could possibly generate additional funds to help with the refinance and reorganization of the Mortgage Loan.

Creditor's counsel noted on the record that Creditor sent Debtor paperwork which would allow Debtor to request a COVID-19 Forbearance near the time of the relief from stay hearing conducted on October 21, 2021, but that Debtor provided a response requesting forbearance during the period after the October 21, 2021, merits hearing for the motion for relief from stay and before the December 9, 2021, hearing for Debtor's Motion to Reconsider. More importantly, however, Creditor's counsel noted that Debtor was eligible to pursue either a loan modification or forbearance, but that forbearance, in her opinion, would not be helpful to Debtor because payments that come due during the forbearance period must still be paid.[14]

---

[14] This conflicts with Debtor's statement that her attempts to make payments were rejected by Creditor.

Page **11** of **18**

The Court continued the hearing for Debtor's Motion to Reconsider to January 26, 2022, and requested details (i.e., identify of lender, loan terms, etc.) related to the refinance that Debtor was trying to secure to pay off the Mortgage Loan.  At the January 26, 2022, hearing, Debtor stated that her personal-injury mediation did not result in a settlement that could provide additional funds to assist with Debtor's attempts to pay off the amounts due under the Mortgage Loan and Debtor argued that the relief from stay was improper on several grounds.[15]

Creditor's counsel noted that Debtor had been approved for an "FHA COVID Mortgage Relief Assistance," which appears to be a loss mitigation program that FHA provides under its COVID-19 Recovery Home Retention Options.  *See* FHA Single Family Housing Policy Handbook 4000.1, pt. III.A.2.o.ii-iii. (Nov. 11, 2021).  Debtor was sent that approval on December 22, 2021, and the deadline to respond was January 9, 2022.  During the continued hearing, Debtor stated that she rejected the FHA loss mitigation relief offered by the Creditor because Debtor believed that she needed to reject the loss mitigation offer to secure forbearance under the CARES Act.  Debtor also argued that 11 U.S.C. §§ 501 & 525 required Creditor to provide her with a COVID-19 Forbearance.

According to the Debtor, forbearance was necessary because it precluded the assessment of further fees and charges whereas a loan modification did not provide such relief. Debtor also stated that she wanted to pay Creditor the mortgage payments that were owed under the Mortgage Loan during the forbearance period.  Debtor stated that she wanted the forbearance to go into effect as of the date of the hearing and to remit payments due on the Mortgage Loan, which would allow her to secure a refinance.  Remitting payments during the forbearance period was important to the

---

[15] Debtor also alleged that the relief from stay motion was product of fraud and that her prior counsel did not represent her interests adequately.

Debtor because according to her discussions with her mortgage broker, if she remitted three months of payments she could qualify for a refinance.

During the hearing, Debtor offered 19 exhibits into evidence. Creditor objected to exhibits 1 through 16 generally because they were not offered at the initial motion for relief from stay hearing on October 21, 2021. Additionally, Creditor raised a specific hearsay objection to an appraisal[16] for the Property that Debtor acquired on December 6, 2021. The Court overruled Creditor's general objection and then took Creditor's hearsay objection under advisement. Finally, three of Debtor's exhibits[17] were entered into evidence without objection by Creditor.

## CONCLUSIONS OF LAW

Under Rule 9023 of the Federal Rules of Bankruptcy Procedure, Rule 59 of the Federal Rules of Civil Procedure applies to bankruptcy cases and proceedings. Fed. R. Bankr. P. 9023. The Fourth Circuit has recognized three grounds for granting a motion to alter or amend a judgment pursuant to Rule 59: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) of the Federal Rules of Civil Procedure "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (internal citation omitted). "Mere disagreement does not support a Rule 59(e) motion." *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (internal citation omitted). A prior decision does not qualify for reconsideration on grounds of clear error or manifest injustice by being "just

---

[16] Debtor's Exhibit 8, C. Griffin Appraisal (Dec. 6, 2021).
[17] During the continued hearing for Debtor's Motion held on January 26, 2022, Debtor's exhibits 17, 18, and 19 were entered into evidence without objection from Creditor.

maybe or probably wrong." *TFWS, Inc. v. Franchot,* 572 F.3d 186, 194 (4th Cir. 2009). Instead, for an order or judgment to be subject to reconsideration, the purported clear error or manifest injustice must render the Court's decision "dead wrong." *Id.*

In the Motion to Reconsider, Debtor primarily advances the following arguments:[18] First, Debtor argues that the order granting relief from stay was the product of fraud by Creditor because Creditor relied on the $150,000 value stated in Debtor's schedules to conclude that Debtor had no equity in the Property. Second, Debtor argues that Creditor improperly denied her forbearance relief under the CARES Act and that Creditor should have extended a COVID-19 Forbearance to her to prevent relief from stay and additional fees from being added to her Mortgage Loan balance which impede her attempts to refinance. As a subpart to the argument concerning forbearance, Debtor contends that her counsel failed to raise the issue at the merits hearing for the motion for relief from stay.

Based on materials taken into evidence, the Court cannot at this time conclude that the Motion to Reconsider should be granted based on fraud in obtaining relief from the stay. Nevertheless, because of the broad language used by the CARES Act for providing forbearance to borrowers suffering from financial hardship due to the COVID-19 pandemic, the Court concludes that the stay relief order entered on October 29, 2022, should be vacated and that the automatic stay should be reinstated at this time.

---

[18] While litigating the Motion for Reconsideration, Debtor raised numerous issues related to her eligibility for a refinance while in bankruptcy, remitting payments to Creditor during her bankruptcy, and issues related to her credit report. Neither Debtor nor Creditor fully developed these issues with citation to relevant authorities. Further such issues appear more appropriate for consideration at the plan modification stage because Debtor stated that she planned to alter course on the treatment of the Mortgage Loan in her confirmed Chapter 13 by securing a COVID-19 Forbearance, remitting payments to Creditor for three consecutive months, and ultimately qualifying and being underwritten for a refinance of the Mortgage Loan. Whether such a proposal can confirmed under the requirements of Chapter 13 have not been properly presented to the court procedurally and are not ripe for adjudication at this time.

**Vacating the stay relief order is necessary to prevent manifest injustice to the Debtor.**

Rule 59(e) is designed "to permit a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Further, relief from a court order is permissible under Rule 59(e) "to correct a clear error of law or prevent manifest injustice." *Id.* One court has concluded that reconsideration of a previously entered dismissal order granting an uncontested motion to dismiss with prejudice could be reconsidered to prevent manifest injustice under Rule 59(e) motion because the claimant mistakenly filed his timely prepared response to the motion to dismiss with the wrong court. *See, e.g., Marbury Law Group, PLLC v. Carl,* 729 F. Supp. 2d 78, 83 (D.D.C. 2010). Because of concerning circumstances arising from Creditor's denial of Debtor's request for COVID-19 Forbearance under the CARES Act and FHA's default servicing guidelines, the Court believes that vacating the order granting Creditor relief from stay is necessary to prevent manifest injustice to Debtor.

Under the CARES Act and FHA's guidelines, borrowers may secure a forbearance of their payment obligations for an FHA insured loan if they suffered from any financial hardship directly or indirectly caused by the COVID-19 Emergency. 15 U.S.C. § 9056; FHA Single Family Housing Policy Handbook, pt. III.A.2.o.i.(A) (Nov. 11, 2021). As preliminary matter, it appears that the Mortgage Loan is insured by FHA because Debtor originated the Mortgage Loan by signing FHA loan forms that FHA uses in South Carolina and because Creditor has been offering Debtor loss mitigation relief options under FHA programs. For instance, at the January 26, 2022, hearing for the Motion for Reconsideration, Creditor's counsel disclosed the Creditor had offered Debtor loss mitigation relief under the "FHA COVID Mortgage Relief Assistance" program. Because the record reflects that Debtor's Mortgage Loan was originated as an FHA loan product and Debtor

has been offered relief under FHA COVID assistance programs, the Court concludes that Debtor's Mortgage Loan is covered by the forbearance relief provisions of the CARES Act and FHA's default servicing guidelines. *See* 15 U.S.C. § 9056(a)(2); FHA Single Family Housing Policy Handbook 4000.1, pt. III.A.2.o.

The CARES Act and FHA's servicing guidelines also provide that a borrower simply needs to request a COVID-19 Forbearance by attesting to a financial hardship caused by COVID-19. Nothing further from the borrower is required to secure a COVID-19 Forbearance. 15 U.S.C. § 9056(a)(2); FHA Single Family Housing Policy Handbook 4000.1, pt. III.A.2.o.i.(B). The record for this case is not precise but it appears that Debtor both sought COVID-19 Forbearance and it was the subject of a letter sent by Creditor before the continued merits hearing for Creditor's motion for relief from stay. It is further that Debtor followed up and provided Creditor with a written request for COVID-19 Forbearance on November 30, 2021. Debtor's financial hardship and inability to pay appear sufficiently caused, directly or indirectly, by COVID-19 because COVID-19 prevented Debtor's son from securing employment to earn funds to pay Debtor rents and assist her with funding her Chapter 13 reorganization.

In a letter dated January 20, 2022, however, Creditor's representative, Jeanine Boirard, stated that Debtor was denied a "Forbearance plan due to bankruptcy status, although the Bankruptcy is now completed." The Creditor's statement is problematic and concerning for three reasons. First, neither the CARES Act nor FHA's applicable default servicing guideline preclude providing borrowers a COVID-19 Forbearance because they are in bankruptcy. Second, Debtor's bankruptcy continues as an ongoing Chapter 13 reorganization as no orders entered by the Court have dismissed or "concluded" Debtor's bankruptcy. Finally, Creditor's use of the term "Forbearance plan" instead of "COVID-19 Forbearance" in the January 12, 2022, letter gives the

appearance that Creditor is confusing FHA's "Formal Forbearance Plan" program with COVID-19 Forbearance under the CARES Act, which unlike FHA's Formal Forbearance Plan, simply requires that Debtor *attest* to a financial hardship, directly or indirectly, caused by COVID-19 to secure forbearance relief.  Overall, the Court's consideration of this letter raises significant concerns that the processes Creditor employs comply with the requirements of the law.

Creditor's January 12, 2022, letter is also cause for concern because it appears that Creditor is not fully and fairly considering all loss mitigation options available to Debtor, including COVID-19 Forbearance.  Indeed, there is nothing in the record for this case indicating that Creditor has previously provided Debtor with COVID-19 Forbearance despite her request.  In fact, it also appears that Creditor never provided Debtor with adequate consideration for a COVID-19 Forbearance before she sent her November 30, 2021, letter.  In a letter dated October 19, 2021, Creditor advised Debtor that "Currently there is no active COVID-19 Forbearance Plan on the account."  In that letter, the Creditor also inaccurately stated that "The Cares [sic] Act is to assist the account holders with the Forbearance Payment Plan for 90 days, which means during those 90-days, PHH will not assess any fees or interest during the active Forbearance period."  This statement is incorrect, under the CARES Act and FHA's default servicing guidelines, borrowers who qualify for COVID-19 Forbearance are automatically granted six months of forbearance with the option to secure additional forbearance if the initial six-month period expires before six months after the conclusion of the COVID-19 Emergency or September 30, 2022, whichever is later.  FHA Single Family Housing Policy Handbook 4000.1, pt. III.A.2.o.i.(B).

When the Court granted relief from stay, the Court believed that Creditor had in good faith properly considered all available loss mitigation options available to Debtor, including COVID-19 Forbearance under the CARES Act.  Indeed, during the continued hearing for Debtor's Motion

for Reconsideration, Creditor's counsel acknowledged that Debtor remained eligible to be considered for forbearance and loan modification. Creditor's letters dated January 12, 2022, and October 19, 2021, however, indicate that Creditor did not properly consider Debtor for all available loss mitigation options available under the CARES Act or the FHA's default servicing guidelines. Accordingly, Debtor's Motion for Reconsideration to vacate the Court's order granting relief from stay to Creditor is granted.

## CONCLUSION

Based on the forgoing, the Court **GRANTS** Debtor's Motion for Reconsideration, **VACATES** the order granting Creditor relief from stay entered on October 29, 2021 [ECF No. 99], and **DENIES** Creditor's motion for relief from stay [ECF No. 85] without prejudice.[19]

**AND IT IS SO ORDERED.**

---

[19] At the hearing on January 26, 2022, the Court continued a status hearing to February 10. 2022 to hear in-person from a knowledgeable representative of Creditor. However, based on this ruling, that hearing is cancelled.