## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **18-04955-eg**

# ORDER

The relief set forth on the following pages, for a total of 21 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**02/16/2023**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 02/16/2023

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

IN RE:

Gertrude Coretta Fennell Hamilton,

Debtor(s).

C/A No. 18-04955-EG

Chapter 13

**ORDER OVERRULING
DEBTOR'S OBJECTION**

**THIS MATTER** is before the Court on Gertrude Coretta Fennell Hamilton's ("Debtor") Objection[1] to the Notice to Debtor in Response to Order Granting Motion to Incur Debt and Obtain Credit ("Notice") filed by U.S. Bank National Association, not in its individual capacity but solely as Legal Title Trustee for RMTP Trust, Series 2021 BKM-TT-V, by and through its servicer, Rushmore Loan Management Services, LLC ("Creditor").[2]  From what the Court can discern from the pleadings before it as well as arguments made at various hearings, the issues before the Court arise following Debtor's request to incur debt to refinance or reinstate her mortgage loan to Creditor.  After the Creditor, at the Court's direction, provided Debtor with the amount of the payoff balance owed on her mortgage, the Debtor began making assertions that the figures provided were not correct but rather inflated by improperly charged fees and interest and further alleging that Creditor and its predecessors were involved in fraudulent and discriminatory conduct and part of a civil conspiracy.

The matter is before the Court in an unusual procedural posture, as no motion has been filed by any party requesting relief from the Court.  More specifically, Debtor filed the Objection[3]

---

[1] ECF No. 143, filed Nov. 30, 2022.  The Court is also considering Debtor's *Objections Notice to Creditor in Response to Entered Order Continuing Hearing and Requiring Creditor Representative to Appear* (ECF No. 157) which, as discussed more fully below, was filed in response to additional documentation provided by Creditor in connection with this matter and appears to supplement the Objection (ECF No. 143).

[2] ECF No. 141, filed Nov. 18, 2022.

[3] Since January 27, 2022, Debtor has represented herself in this bankruptcy case, and this Court has liberally construed her pleadings filed in this matter as required by applicable law. *See Cilwa v. Fort*, No. 7:17-cv-00450, 2018 WL 1801607, at *2 (D.S.C. Jan. 26, 2018) (citing *Erickson v. Pardus*, 551 U.S. 89 (2007); *Estelle v. Gamble*, 429 U.S. 97,

in response to the Notice, which Creditor filed to provide certain documents as required by the Court's order granting Debtor's motion to incur debt and obtain credit.[4]  In the Objection, Debtor raises concerns regarding the accuracy of the payoff information provided by Creditor and attempts to raise vague and conclusory claims of fraud, discrimination, and civil conspiracy.  Creditor filed a Response to Debtor's Objection, requesting a hearing.[5]  Given the history of the case as set forth in further detail below, the Court held the hearing on the Objection to hear the concerns that Debtor raised in an attempt to narrow the issues and provide her with an opportunity to explain what relief she was seeking from the Court.  At the initial hearing on the Objection held on December 14, 2022, it became clear to the Court that Creditor needed to provide additional documentation to Debtor to address her concerns and to also make available at a continued hearing a knowledgeable representative of the Creditor as a witness to address Debtor's allegations and concerns regarding the amounts owed on her loan and to provide a breakdown of the fees and charges on her account.

At the conclusion of the initial hearing, the Court entered an Order Continuing Hearing and Requiring Creditor Representative to Appear ("First Continuance Order").[6]  The First Continuance Order denied Debtor's request for relief on the grounds of discrimination and fraud and required Creditor to provide a payoff statement good through December 31, 2022, with a breakdown of escrow, recoverable corporate advances, attorney's fees and costs and any other fees or charges incurred, and a breakdown of unpaid interest due at payoff.  On January 4, 2023, Creditor filed a Notice in Response to the First Continuance Order, attaching a payoff statement and breakdowns

---

106 (1976)).  The Court has provided Debtor with multiple opportunities at hearings scheduled relating to this matter to present her arguments and provide evidence in support of her claims.
[4] Specifically, Creditor attached the following:  Notice of Temporary Forbearance filed 03/25/2022, Notice of Temporary Forbearance filed 06/17/2022, Notice of Forbearance Plan filed 08/26/2022, Notice of Forbearance Plan filed 10/14/2022, Forbearance Cancellation Letter Dated November 4, 2022, Payment History, Transaction History, Reinstatement Quote and Payoff Statement good through the end of November 2022, as well as a statement of the time periods of Covid-19 Forbearance plans extended to Debtor.
[5] ECF No. 146.
[6] ECF No. 148, filed Dec. 16, 2022.

2

of unpaid interest due at payoff, escrow/impound overdraft, suspense balance and recoverable corporate advances ("January Notice").  On Creditor's motion, the hearing on the matter was continued to February 2, 2023.  The order continuing the hearing ("Second Continuance Order") required Creditor to provide additional information regarding certain fees included on the payoff statement filed with the January Notice.[7]

Debtor then filed an objection to the January Notice, raising numerous questions and concerns regarding the documentation and information previously provided by Creditor (the "Final Objection").[8]  In response to the Second Continuance Order, Creditor filed a further notice providing Debtor's payment history and a description of fees ("Final Notice").[9]  The Court conducted a final hearing on the matter on February 2, 2022, which was attended by Debtor, Creditor's Counsel, and a Legal Proceeding Specialist for the Creditor, Darla Martin, who presented testimony regarding Debtor's mortgage loan and the amount of the payoff owed.  During the hearing, Debtor was provided with an opportunity to explain what relief she is seeking and what statutory authority she is relying upon, and to present any evidence in support of her claims. Following a thorough review of the record, testimony and evidence presented and admitted into the record at the hearing, the Court makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

Over the past year, Debtor has raised concerns through documents filed with the Court and has made various allegations in her papers with respect to fees and expenses charged to her mortgage loan account, the improper application of her payments to her account, and the multiple COVID-19 forbearance periods applied to her account. On multiple occasions during the

---

[7] ECF No. 152, filed January 9, 2023.
[8] ECF No. 157, filed January 17, 2023.
[9] ECF No. 158, filed January 27, 2023.

bankruptcy case, Debtor has requested reinstatement and payoff quotes from Creditor for the asserted purpose of reinstating or refinancing her mortgage debt to Creditor through another lender but has been unsatisfied with the balance quotes provided by the Creditor. Debtor's confusion and frustration regarding her mortgage account appear to have been exacerbated by multiple transfers of the mortgage between loan servicing companies during her bankruptcy case and the fact that she has been proceeding in this matter without the assistance of counsel since January of 2022. Moreover, more than four years have passed since the case was filed, during which Debtor has made only 14 full mortgage payments.[10] Accordingly, the amount necessary to bring Debtor's loan current, including unpaid interest, escrow account shortages for taxes and insurance, and recoverable corporate advances,[11] has grown considerably from $21,355.47 as of the Petition Date to nearly $50,000 as of the date of the hearing on this matter.

## I.    Background

A detailed history regarding the pre-petition origination of Debtor's mortgage loan with Creditor's predecessor-in-interest and describing the events occurring between the parties in this bankruptcy case through the end of 2021 was provided in an order entered by Judge Waites[12] in this case on February 4, 2022 (*Order Granting Motion to Reconsider Relief from Stay and Denying Motion for Relief from Stay without Prejudice,* ECF No. 115) and is incorporated herein by reference.

To briefly summarize, Debtor fell behind in her payments on the mortgage loan in March of 2017, and Creditor's predecessor-in-interest, Ocwen Loan Servicing, LLC ("Ocwen"), filed a

---

[10] The Court notes that there was a period, from approximately June of 2019 until March of 2022, following Debtor's rejection of a loan modification offered by Creditor, during which it appears Creditor refused to accept payment from Debtor.

[11] Recoverable corporate advances are advances made by the mortgage lender for charges that are recoverable under the terms of the mortgage, such as property inspection fees, attorney's fees and costs, appraisal fees and title fees.

[12] This case was reassigned to the undersigned following Judge Waites' retirement in June of 2022.

foreclosure action against Debtor, ultimately obtaining a judgment of foreclosure and sale against Debtor on July 20, 2018.  Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on September 28, 2018 (the "Petition Date"),[13] which stopped the judicial sale of Debtor's real property.  Debtor filed a chapter 13 plan providing that she would seek "loss mitigation or a consensual loan modification (LM/MM) of the mortgage loan secured by the following property: 99 Elmwood Street, Walterboro, SC 29488."[14]  Ocwen filed a proof of claim in Debtor's bankruptcy case, asserting a secured claim in the amount of $161,891.84, which includes pre-petition arrearage of $21,355.47 as of the Petition Date.  The prepetition arrearage amount includes $4,692.93 in prepetition fees and costs.  The Court entered an order requiring the parties to engage in loss mitigation/mortgage modification in accordance with Judge Waites' Chambers Guidelines on November 27, 2018.[15]  Debtor's plan was confirmed on February 6, 2019.

On or about March 9, 2019, Ocwen transferred its mortgage claim to PHH Mortgage Corporation ("PHH").   Sometime in April or May of 2019, PHH offered Debtor a loan modification pursuant to the confirmed plan's loss mitigation provisions, but it was rejected by Debtor because it extended the repayment term an additional 11 years and required a significant balloon payment at the end of the repayment term.[16]  PHH again offered Debtor a loan modification on December 21, 2021, which Debtor also rejected.[17]

---

[13] ECF No. 1.

[14] ECF No. 30, filed Oct. 19, 2018.

[15] ECF No. 35. The order provided that "[u]nless a shorter time is set by applicable law, rules or regulations, the Mortgage Creditor shall have a total of 120 days from entry of this Order ('Loss Mitigation Period') to conclude its consideration, and provide a final response to the Loss Mitigation Request by advising on all means of Loss Mitigation, including mortgage modification, or verify a denial (after the conclusion of all appeals) by filing a Mortgage Loan Modification Report.  Any denial shall include a detailed explanation for the denial, including specific and enumerated reasons."  The order further provided that after the expiration of the 120-day loss mitigation period, "[a]ll parties remain obligated to act in good faith and to continue the LM/MM review until its final conclusion."

[16] ECF No. 115, at 5.

[17] ECF No. 157, at 23.

## II.    Debtor's Requests for Forbearance Relief

Debtor asserts that she made her first request for COVID-19 forbearance relief under the CARES Act, 15 U.S.C. § 9056(b)(1), in October of 2020, because her son, who resides with her, lost his job due to COVID-19 and she relies upon his rental income to make her mortgage payments.  Debtor did not present any evidence corroborating her assertion that she made a request for COVID-19 forbearance relief in October of 2020.  The evidence indicates that Debtor made requests to PHH for CARES Act forbearance relief on August 26, 2021,[18] November 30, 2021, December 7, 2021,[19] December 16, 2021,[20] and in early January of 2022.[21]

## III.    Relief from Stay and Subsequent Order Vacating Relief from Stay

On April 29, 2021, PHH filed a motion for relief from the automatic stay based on Debtor's failure to make adequate protection payments during the bankruptcy case.[22]  On August 26, 2021, the day of the hearing on the motion for relief from stay, Debtor sent an email to PHH again requesting COVID-19 forbearance relief under the CARES Act because her son remained unemployed due to COVID-19.  At the hearing on the motion for relief from stay, Debtor's counsel requested a continuance to allow Debtor additional time to secure a refinance to pay off the mortgage loan, which the Court granted.  At the continued hearing on October 21, 2021, which Debtor did not attend, Debtor's counsel again requested additional time to allow Debtor to secure a refinance, but PHH objected to a further continuance, and the Court ultimately granted relief from stay.[23]

---

[18] ECF No. 115, at 10.
[19] ECF No. 143, at 12.
[20] ECF No. 143, at 11.
[21] ECF No. 143, at 12.
[22] The payment history on the loan indicates that prior to the filing of the motion for relief from stay, Debtor made only two full post-petition payments.  Debtor asserts that PHH refused to accept her payments.
[23] ECF No. 99, filed Oct. 29, 2021.

Debtor then filed a motion to reconsider the stay relief order.[24]  On December 22, 2021, PHH offered Debtor FHA loss mitigation relief, which Debtor rejected, asserting that a CARES Act forbearance was necessary because it precluded the assessment of further fees.  After a hearing on the motion to reconsider, the Court granted the Debtor's motion and vacated the stay relief order by order entered February 4, 2022,[25] finding that PHH did not properly consider Debtor for all available loss mitigation options, including her requests for COVID-19 forbearance relief, available under the CARES Act or the Federal Housing Authority's default servicing guidelines. Notably, the Court also determined that, based on the materials taken into evidence, it was unable at that time to conclude that the motion to reconsider should be granted based on fraud in obtaining relief from stay.

### IV.    Forbearance Provided to Debtor under CARES Act

PHH filed a Notice of Temporary Forbearance[26] on March 25, 2022, providing Debtor with CARES Act forbearance relief from March 1, 2022, through May 31, 2022.[27]  On June 17, 2022, PHH filed a second Notice of Temporary Forbearance, providing Debtor with CARES Act forbearance relief from June 1, 2022, through August 31, 2022.[28]  In late July of 2022,[29] the mortgage loan was transferred to Creditor, and on August 26, 2022, Creditor filed a Notice of Forbearance Plan, providing Debtor with COVID-19 forbearance relief from July 1, 2022, through

---

[24] ECF No. 101, filed Nov. 8, 2021.

[25] ECF No. 115.  The order further denied PHH's motion for relief from stay without prejudice.

[26] ECF No. 119.

[27] The Notice provided that Debtor is provided a temporary suspension of post-petition mortgage payments due and owing during the forbearance period and that all terms and provisions of the mortgage note and security instrument, other than the payment obligations, will remain in full force and effect unless otherwise adjusted by this court or through a loan modification.

[28] ECF No. 124.

[29] A Notice of Assignment of Claim was filed on July 29, 2022.

September 1, 2022.[30]  On October 14, 2022, Creditor filed a Notice of Forbearance Plan, providing

Debtor with COVID-19 forbearance relief from July 1, 2022, through December 1, 2022.[31]

Debtor filed an objection to the October 14, 2022 Notice of Forbearance Plan, asserting

that she did not request or agree to another forbearance and rejecting that forbearance.[32]  In her

objection, Debtor indicated that the unrequested forbearance on her account was hampering her

efforts to pursue a refinance of her mortgage.   Debtor's objection was resolved by the Creditor's

agreement to cancel the last forbearance, and the Court entered a text order treating the matter as

moot.[33] Following Debtor's rejection of the last forbearance, Creditor filed a Notice of Post

Petition Mortgage Fees, Expenses and Charges on December 29, 2022, asserting charges for

attorney's fees of $650 incurred on October 11, 2022 and property inspection fees totaling $40,

incurred on July 19, 2022 and December 2, 2022.

### V.    Debtor's Motion to Incur Debt

Debtor filed a motion to incur debt on September 22, 2022, seeking, among other things,

court approval to incur debt and/or obtain credit to refinance the mortgage loan and pay off

Creditor.  The motion to incur debt also included allegations of fraudulent lending, conspiracy and

discrimination against Creditor.  Creditor filed a response indicating that while it did not object to

Debtor's motion to incur debt to pay off its mortgage loan, it objected to any allegations of fraud,

conspiracy or discrimination.  The Chapter 13 Trustee filed a notice of consent to the motion to

incur debt. At the hearing on the motion, Debtor raised concerns regarding Creditor's

responsiveness to her requests for a payoff quote to allow her to proceed with the refinancing and

---

[30] Debtor sent a letter to Creditor on August 29, 2022 seeking to reinstate the mortgage and requesting a reinstatement quote.  ECF No. 129 at 4.
[31] ECF No. 133.
[32] ECF No. 134, filed Oct. 24, 2022.
[33] ECF No. 137, filed Nov. 3, 2022.

Creditor's charging of unnecessary fees to her account.  The Court granted Debtor's motion and entered an order authorizing Debtor to incur debt to refinance the mortgage loan and requiring Creditor to provide Debtor with (1) a payoff quote, (2) specific information as to the time period for which COVID-19 forbearance was extended to Debtor, and (3) contact information for a representative of Creditor knowledgeable about Debtor's mortgage loan.[34]  Debtor's remaining requests for relief, including claims based upon fraud, conspiracy, and discrimination, were denied without prejudice.

### VI.    Information Provided by Creditor Regarding Debtor's Mortgage

In response to the Court's order on Debtor's motion to incur debt, Creditor filed the Notice, which provided the following information: (1) Notice of Temporary Forbearance filed 3/25/22, (2) Notice of Temporary Forbearance filed 6/17/22, (3) Notice of Forbearance Plan filed 8/26/22, (4) Notice of Forbearance Plan filed 10/14/22, (5) Forbearance Cancellation Letter dated November 4, 2022, (6) Payment History, (7) Transaction History, (8) Reinstatement Quote good through November 30, 2022 and (9) Payoff Statement good through December 1, 2022.  The Notice also contains a statement regarding the time periods for COVID-19 Forbearance extended to Debtor, which included: (1) March 1, 2022 to May 31, 2022; (2) June 1, 2022 to August 31, 2022; (3) July 1, 2022 to September 1, 2022, which was then extended to include through December 1, 2022.  It further states that "Creditor has cancelled the Debtor's Forbearance pursuant to the terms of the Order."[35]

In response to the Court's First Continuance Order, Creditor filed the January Notice which provided the following information: (1) Payoff Statement Good through January 1, 2023, (2)

---

[34] ECF No. 138, filed Nov. 4, 2022.

[35] The Order on Debtor's Motion to Incur Debt stated only that "counsel for the Creditor indicated that she would contact her client to have the last forbearance cancelled," and therefore the date marking the end of the forbearance period remains unclear.

Unpaid Interest Due at Payoff Breakdown, (3) Escrow/Impound Overdraft Breakdown, (4)

Suspense Balance Breakdown, and (5) Recoverable Corporate Advances Breakdown.  In addition,

the January Notice provides explanations for several charges that were not due as of the filing of

the January Notice, including the Recon/Recording Fee (which is charged if the loan is paid off),

Fcl Fee/Cost Breakdown (charge for dismissal of foreclosure action), Bk Fee/Cost Breakdown

(charge for handling of this instant bankruptcy matter), and Property Inspection Breakdown (fee

for property inspection that would occur in January of 2023).  The January Notice indicates that

the total amount to pay the loan in full, good through January 1, 2023, is $193,121.91.

On January 27, 2023, Creditor filed the Final Notice, which provided a payment history

demonstrating the principal balance on the mortgage loan and a further explanation regarding the

Fcl Fee/Cost Breakdown, Bk Fee/Cost Breakdown, and Property Inspection Breakdown.  The

Final Notice indicates that the principal balance on the loan as of January 4, 2023, is $142,007.01.[36]

The payment history attached to the Final Notice provides that during her bankruptcy case, Debtor

made the following payments, which were applied to her account:

| Date | Payment Amount | Amount Due | Principal Balance |
|---|---|---|---|
| 2/28/2019 | $1,183.42 | $1,172.17 | $146,112.50 |
| 3/29/2019 | $887.05 | $1,172.17 | $146,112.50 |
| 4/30/2019 | $887.05 | $1,172.17 | $145,805.67 |
| 5/8/2019 | $887.05 | $1,172.17 | $145,497.37 |
| 3/10/2021 | $347.71 | $1,172.17 | $145,497.37 |
| 3/23/2022 | $1,201.07 | $1,172.17 | $145,497.37 |
| 4/28/2022 | $587.99 | $1,172.17 | $145,187.59 |
| 5/26/2022 | $1,201.17 | $1,172.17 | $144,876.33 |
| 6/22/2022 | $1,201.17 | $1,175.05 | $144,563.58 |
| 7/28/2022 | $1,120.83 | $1,175.05 | $144,249.33 |
| 8/26/2022 | $1,120.83 | $1,175.05 | $143,933.57 |
| 10/3/2022 | $1,201.17 | $1,175.05 | $143,616.30 |
| 10/28/2022 | $1,201.17 | $1,175.05 | $142,977.19 |
| 11/25/2022 | $1,288.00 | $1,175.05 | $142,655.34 |

---

[36] ECF No. 158, at 5.

| 12/29/2022 | $1,221.17 | $1,175.05 | $142,331.95[37] |
|---|---|---|---|

## CONCLUSIONS OF LAW

Debtor's Objection raises several issues, which can be summarized as follows: (1) whether the payoff information provided by Creditor was accurate; (2) whether Creditor improperly charged fees to her account during her COVID-19 forbearance period; and (3) whether Creditor engaged in fraud, discrimination, or civil conspiracy against Debtor during her bankruptcy case.

### I.    Accuracy of Payoff Information

From the outset, the Court observes that Debtor has not filed an objection to Creditor's proof of claim. Debtor has not asserted that Creditor's proof of claim does not meet the requirements of Fed. R. Bankr. P. 3001, which governs the form and content of a proof of claim. Therefore, Creditor's proof of claim is *prima facie* valid under Fed. R. Bankr. P. 3001(f) and is deemed allowed under 11 U.S.C. § 502(a).  It is unclear which provision of the Bankruptcy Code or Federal Rule of Bankruptcy Procedure Debtor relies upon to seek relief regarding her assertion that Creditor provided her with inaccurate payoff information.

While her various objections have asserted vague and uncorroborated allegations that the balance on her loan is inaccurate as a result of improperly applied payments, fees, and charges that should not have been added to her outstanding balance, in the Final Objection, Debtor pointed out some specific examples of how the Creditor's figures are not accurate.  By way of example, Debtor first asserts that a pre-petition payment made on January 21, 2018 was applied to "Unapplied Funds" instead of principal and interest.  Debtor's payment on that date was in the amount of $932.81, which is less than her contractual monthly payment at that time of $1,120.83.[38]  Debtor's

---

[37] The payment history reflects that a pre-petition payment was applied on January 4, 2021, bringing the principal balance to $142,007.01.

[38] Proof of Claim 5-1, at 13.

mortgage account statement[39] from February 19, 2018 indicates that this payment was applied to Unapplied Funds and further states that: "Any partial payments made are not applied to the mortgage account, but instead are held in a separate unapplied funds account.  If the balance of a partial payment is paid, the funds will then be applied to the mortgage account."  Debtor has failed to demonstrate that Creditor's application of this payment was improper.

Debtor argues that other payments made during the course of her bankruptcy case were not accurately applied to her account.  Specifically, she asserts that timely monthly payments made from March 23, 2022 through November 18, 2022 were not accounted for in the payoff quote provided by Creditor in the Notice.  She further asserts that her interest payments from 2018, 2019, and 2022 were not accurately reflected in the payoff quote.  Creditor's representative, Ms. Martin, testified that the payment history attached to the Final Notice accurately reflected the application of Debtor's payments made during her bankruptcy case to principal and interest and that the payoff quote filed on January 4, 2023 (ECF No. 150, at 5) accurately reflected the amount due as of January 1, 2023.  Debtor cross-examined Ms. Martin but failed to demonstrate through her questioning that there were any errors or discrepancies in the payment history or payoff quote.

Debtor further asserts that the escrow balance on the payoff quote is "misleading or intentionally wrong."[40] She refers to a February 1, 2022 monthly statement from PHH,[41] which shows an escrow balance of $7,098.21, and the January 4, 2023 payoff quote, which shows an escrow balance of $8,393.75.[42]  Debtor appears to be concerned that the escrow account balance increased by $1,295.54 from February 1, 2022 to January 4, 2023, despite the payments she made during 2022. Debtor's mortgage provides for the escrow of taxes and insurance, which means that

---

[39] ECF No. 157, at 14.
[40] ECF No. 157, at 10
[41] ECF No. 157, at 28.
[42] ECF No. 150, at 5.

Debtor is obligated to "include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for … taxes … and premiums for insurance…."[43] It appears that hazard insurance was paid by PHH in the amount of $1,527.00 on February 2, 2022.  It further appears that three escrow repayments from Debtor totaling $495.66 were credited to the escrow account by PHH, bringing the escrow balance to $8,129.55.  When the loan was acquired by Creditor in August of 2022, the acquired escrow advance was $8,129.55.  Creditor paid taxes on November 22, 2022 in the amount of $833.60, increasing the escrow balance to $8,963.15.  Creditor's payment history beginning in August of 2022 reflects that five escrow payments totaling $569.40 were credited to the escrow account,[44] bringing the escrow balance to $8,393.75, which is the amount stated on the January 4, 2023 payoff quote.

In the Final Objection, Debtor further points to a pre-foreclosure referral letter, dated May 18, 2017, which shows an escrow balance of $509.82, arguing that the increase to $8,393.75 in 2023 is misleading or wrongful.  Considering the amounts incurred by Creditor and its predecessors in interest for taxes and hazard insurance on the property, it does not appear unusual for the escrow balance to increase by nearly $2,000 per year during the bankruptcy case when Debtor only made 15 payments.  The Court finds no evidence to support Debtor's claim that the escrow balance was misleading or intentionally wrong.

## II.    Improperly Charged Fees during COVID-19 Forbearance

Debtor asserts that Creditor and PHH improperly charged fees during the COVID-19 Forbearance period in violation of the CARES Act.  The CARES Act, 15 U.S.C. § 9056(b), permits a borrower to "request forbearance on a Federally backed mortgage loan, regardless of delinquency status, by (A) submitting a request to the borrower's servicer; and (B) affirming that the borrower

---

[43] Proof of Claim 5-1, at 55 (Copy of Recorded Mortgage, dated January 16, 2008).
[44] ECF No. 150, at 14.

is experiencing a financial hardship during the COVID-19 emergency." During the COVID-19 forbearance period, "no fees, penalties, or interest beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract, shall accrue on the borrower's account." 15 U.S.C. § 9056(b)(3). According to the mortgage account information provided by Creditor, the only fees charged to Debtor's account from March 2019 through the date of the hearing were a property inspection fee in the amount of $20.00 incurred on July 22, 2022, a "Bankruptcy Fee" of $650.00 incurred on October 19, 2022, and a property inspection fee incurred on December 7, 2022.[45] Although it remains unclear to the Court the exact dates of the forbearance period provided to Debtor,[46] Creditor's representative testified that the forbearance period began on March 1, 2022 and terminated on November 4, 2022, when Debtor rejected the final forbearance provided by Creditor in the Notice of Forbearance Plan filed on October 14, 2022. Accordingly, the Court concludes that the property inspection fee incurred on July 22, 2022 and the "Bankruptcy Fee" incurred on October 19, 2022 are nonrecoverable by the Creditor, because they were charged to Debtor's account during the COVID-19 forbearance period in violation of 15 U.S.C. § 9056(b)(3).

Debtor further asserts that her attorney's fees could have been avoided if Creditor had honored its obligations under the CARES Act. Debtor refers to the Statement of Supplemental Chapter 13 Fees filed by her former counsel on May 6, 2021, for work connected with the preparation and filing of an objection to Creditor's motion for relief from stay pursuant to SC LBR

---

[45] These charges are also reflected in the Notice of Postpetition Mortgage Fees, Expenses, and Charges filed by Creditor on December 29, 2022. This notice indicates that the "Bankruptcy Fee" was for Creditor's response to Debtor's Motion to Incur Debt and Obtain Credit.

[46] The confusion regarding the forbearance period lies in the lack of specificity regarding Creditor's cancellation of the forbearance. In the Notice, Creditor states only that "Creditor has cancelled the Debtor's Forbearance pursuant to the terms of the Order." (ECF No. 141). The Order merely stated that "counsel for the Creditor indicated that she would contact her client to have the last forbearance cancelled," and therefore the Court treated the Debtor's objection to forbearance as moot as no further relief was being sought at that time.

2016-1(b)(2).[47]   Debtor was charged $500 for those services.   The Statement of Supplemental

Chapter 13 Fees expressly states that "[u]nless an objection to the Statement is filed within fourteen

(14) days of service or unless the Court orders otherwise, the supplemental fee shall be approved

for disbursement subject to the terms of the confirmed plan and SC  LBR 2016-1."   It appears that

Debtor was properly served with a copy of the Statement of Supplemental Fees, but Debtor did

not file an objection to the Statement within the applicable deadline.   The Statement of

Supplemental Chapter 13 Fees further states that all supplemental fees approved for disbursement

"remain subject to the Court's consideration of the fee under 11 U.S.C. § 329(b) at any time prior

to the closing of the case."[48]

Based on the Court's record, Debtor's former counsel appeared and represented Debtor's

interests at two hearings that were held regarding the stay relief motion.   The fee appears to be

authorized by the retainer agreement with Debtor's former counsel, which is signed by Debtor.

Debtor also did not raise this issue in connection with her counsel's motion to withdraw as

attorney, filed on January 18, 2022, nor did she request relief regarding these attorney's fees in

connection with her motion to reconsider relief from stay.   It is unclear the legal basis, statutory or

otherwise, upon which Debtor now seeks relief from these attorney's fees, more than a year after

they were incurred.   Even if the Court were to undertake a review of the fees under 11 U.S.C. §

329(b), it appears that the fees are in line with the customary rates charged in chapter 13 cases for

similar services.   *See In re Welch*, 464 B.R. 518, 527 (Bankr. D.S.C. 2022) ("In determining what

constitutes reasonable compensation, the Court may rely on its own expertise regarding reasonable

---

[47] ECF No. 87, filed May 6, 2021.

[48] 11 U.S.C. § 329(b) provides that if "compensation [to an attorney representing the debtor] exceeds the reasonable value of any such services, the court may cancel any such agreement [for services rendered in connection with the debtor's case], or order the return of any such payment, to the extent excessive to (1) the estate … or (2) the entity that made such payment."

compensation and review fees charged by and awarded to other attorneys who represent debtors

in chapter 13 cases in this District"). It appears that 15 U.S.C. § 9056(b)(3) protects Debtor from

being charged with fees by the Creditor during the forbearance period, not her counsel. Therefore,

Debtor's request for relief regarding her attorney's fees for defending the motion for relief from

stay is denied.

### III.    Fraud, Discrimination, and Civil Conspiracy

Finally, Debtor claims that Creditor's conduct in connection with her bankruptcy case

constitutes fraud, discrimination, and/or civil conspiracy and therefore she requests that the

Creditor's claim be "discharged." As an initial matter, the Court finds that these claims are not

properly before the Court and should be denied on this basis alone. Debtor attempts to raise these

claims in an objection to Notice filed by Creditor, which merely contains documentation Creditor

was ordered by the Court to provide. Debtor has neither filed an objection to Creditor's claim

under 11 U.S.C. § 502 nor a complaint challenging the validity of Creditor's lien in an adversary

proceeding in this Court. *See* Fed. R. Bankr. P. 7001(2) (stating that a proceeding to "determine

the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding).

Notably, claims of fraud are required to be alleged with particularity under Fed. R. Bankr.

P. 7009(b), which provides that in "alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake." Since Debtor is self-represented, the Court will

liberally construe her Objection and consider the "claims" raised therein. *Cilwa v. Fort*, No. 7:17-

cv-00450, 2018 WL 1801607, at *2. However, "[t]he mandated liberal construction means only

that if the court can reasonably read the pleadings to state a valid claim on which an appellant

could prevail, it should do so." *Id.* With that said, based on the evidence presented, the Court

cannot make any findings of fraud, discrimination, and/or civil conspiracy.

16

A. *Fraud*

Debtor asserts that her counsel and PHH were aware of her request for CARES Act forbearance and had "both a motive and intent to deceive this Debtor and the bankruptcy court; greed for them to get paid." In order to establish a claim for fraud under South Carolina law, "the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Regions Bank v. Schmauch*, 354 S.C. 648, 672, 582 S.E.2d 432, 444-45 (Ct. App. 2003). In its February 4, 2022 Order, the Court concluded that PHH did not properly consider Debtor for all available loss mitigation options, including her requests for COVID-19 forbearance relief, available under the CARES Act or the Federal Housing Authority's default servicing guidelines. For this reason, the Court vacated its order granting relief from stay and reinstituted the stay in Debtor's bankruptcy case. However, the Court specifically concluded that fraud was not a basis for its reconsideration of the stay relief order. Since that time, PHH and Creditor have complied with the Court's directives by providing Debtor with forbearance from March 1, 2022 through November 4, 2022, when she rejected any further forbearance. Moreover, other than the two charges for fees discussed above, Creditor appears to have waived all other fees and charges on the account from March of 2019 forward.

Debtor contends that the back-dating of the Notice of Forbearance Plan is evidence of a planned misleading scam to cover up fees during the forbearance. Debtor asserts that the Notice of Forbearance Plan filed on October 14, 2022 was filed to prevent Debtor from being able to obtain funds to bring the mortgage current. While there does appear to be an overlap in the dates

of forbearance provided, this appears to have been likely caused by the transfer of the mortgage from PHH to Creditor in late July of 2022 during the overlapping period.[49]  The only fee charged during that time period was the $20 property inspection fee, which the Court has disallowed. Debtor requests that Creditor backdate and delete "staged" fees from April 2021 through April 2022 with extensions for the maximum amount of added time allowed for CARES Act forbearance.  It does not appear that any fees were charged to her account by Creditor during this time period.  Therefore, Debtor has failed to demonstrate any injury from the alleged intentional backdating or any legal authority supporting the relief she requests and therefore Debtor's request for relief on those grounds is denied.

Debtor further argues that Creditor's proof of claim is misleading or a misrepresentation of material fact because it states that the total debt is $161,891.84 and the arrearage is $21,355.47. Debtor states that the Form 1098 for 2019 confirms that the outstanding principal balance is $145,806.67.[50]  It appears that Debtor misunderstands the figures stated on the Creditor's proof of claim.  The $161,891.84 figure is the total debt calculation, which includes the principal balance, interest due, fees, costs, and escrow deficiency for funds advanced, less the total funds on hand. The Mortgage Proof of Claim Attachment to the proof of claim states that the principal balance as of the date of the petition (September 28, 2018) is $146,417.86.  The amounts stated on the proof of claim do not appear to be misleading or misrepresented.  As discussed above, Debtor has not objected to Creditor's proof of claim and it is deemed *prima facie* valid under Fed. R. Bankr. P.

---

[49] Debtor asserts that Creditor shows a "pattern or practice of changing to another servicer instead of addressing and correcting mistakes on this mortgage loan" and engages in suspicious accounting acts with applying funds to suspense and unapplied funds accounts.  As discussed above, the Court finds no evidence of improper accounting practices by Creditor regarding Debtor's mortgage loan, other than the two fees charged during the forbearance period which the Court has disallowed.

[50] ECF No. 157, at 16.

3001(f).   Accordingly, the Court finds no reasonable basis to find that Debtor has stated a valid

claim for fraud and denies Debtor's request for relief on this ground.

### B.  Discrimination

Debtor further argues that PHH's denial of Debtor's requests for forbearance prior to 2022

constitutes discrimination in violation of 11 U.S.C. § 525(d), which provides that "a person may

not be denied relief under sections 4022 through 4024 of the CARES Act (15 U.S.C. [§§] 9056,

9057, 9058) because the person is or has been a debtor under this title."  11 U.S.C. § 525(d).  As

discussed above, the Court previously concluded that PHH's denial of forbearance was improper

and constituted grounds to vacate its stay relief order.  Following the entry of the order vacating

the relief from stay, PHH and Creditor provided Debtor with forbearance relief under the CARES

Act, extending the periods of forbearance until Debtor rejected further extensions on November 4,

2022.  As a result of the Court's order vacating the stay relief order and the Creditor's waiver of

fees incurred from March 2019 forward, it appears that Debtor has, in effect, received forbearance

for nearly four years.  The Court is unable to discern from the record what further relief Debtor is

now requesting.  Accordingly, Debtor's request for relief on grounds of discrimination in violation

of 11 U.S.C. § 525(d) is denied.

### C.  Conspiracy

Debtor asserts that from May 27, 2021 through January 26, 2022, unnecessary hearings

were intentionally staged to heighten attorney fees and deplete her equity.  She argues this conduct

constitutes a civil conspiracy.  Under South Carolina law, a plaintiff asserting a civil conspiracy

claim must establish (1) the combination or agreement of two or more persons, (2) to commit an

unlawful act by unlawful means, (3) together with the commission of an overt act in furtherance

of the agreement, and (4) damages proximately resulting to the plaintiff.  *Paradis v. Charleston*

*Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021).  It is unclear from the record which entity or person Debtor asserts engaged in the alleged conspiracy with Creditor.  The record reflects that no attorney fees were charged by Creditor to Debtor's mortgage account during this period.  The Court finds that Debtor has presented no evidence indicating a claim for civil conspiracy exists under state law.  Accordingly, the Court denies Debtor's request for relief on this ground.

## CONCLUSION

The Court has carefully considered each of Debtor's allegations and has spent a significant number of hours reviewing her pleadings and the evidence presented into the record.  The Creditor has been cooperative and responsive to the Court's orders requiring it to provide further information.  At this time, Debtor has rejected further forbearance, and the Court finds that the COVID-19 forbearance period provided by Creditor has concluded.  Accordingly, it is worth noting that unless Debtor can assert some plausible reason otherwise, it appears that Creditor may charge Debtor's mortgage account in accordance with the loan documents for further fees and charges, including attorney's fees for responding to requests for relief from Debtor filed with the Court incurred after the forbearance period terminated.

For the foregoing reasons set forth in this Order, Debtor's Objection to Creditor's Notice to Debtor in Response to Order Granting Motion to Incur Debt and Obtain Credit is overruled and all requests for relief contained in her Objection are denied, except that the Court finds that the property inspection fee of $20.00 incurred by Creditor's predecessor in interest on July 22, 2022 and the "Bankruptcy Fee" of $650.00 incurred by Creditor on October 19, 2022 are nonrecoverable fees and must be removed as charges on Debtor's mortgage account.

**AND IT IS SO ORDERED.**