**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 18-04955-EG |
| Gertrude Coretta Fennell Hamilton, | Chapter 13 |
| Debtor(s). | **ORDER DENYING MOTION FOR RELIEF FROM AUTOMATIC STAY** |

**THIS MATTER** is before the Court on the Motion for Relief from Automatic Stay ("Motion") filed by U.S. Bank National Association, not in its Individual Capacity but Solely as Trustee for RMTP Trust, Series 2021 BKM-TT-V ("Movant").[1] Gertrude Coretta Fennell Hamilton ("Debtor"), who is currently proceeding in this case *pro se*, filed an objection to the Motion and an objection to the Certification of Facts attached to the Motion.[2] The parties filed separate Statements of Dispute.[3] The Court conducted a hearing on the Motion on April 26, 2023, which was attended by the Debtor and Movant's counsel. After considering the pleadings, evidence, and applicable law, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052:[4]

**FINDINGS OF FACT**

Movant holds a promissory note dated January 16, 2008 in the original principal amount of $172,550.00, which is secured by a mortgage on Debtor's principal residence at 99 Elmwood Street, Walterboro, SC 29488 (the "Property"). Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on September 28, 2018 (the "Petition Date"). In her Schedules,

---

[1] ECF No. 173, filed Mar. 16, 2023.
[2] ECF Nos. 183 and 184, filed Mar. 30, 2023.
[3] ECF Nos. 188 and 189.
[4] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such; and to the extent any conclusions of law constitute findings of fact, they are so adopted. Moreover, the Court incorporates herein the extensive findings of fact previously made in its order entered on February 16, 2023 (ECF No. 161), which sets forth the extensive history of this case which is applicable to the conclusions of law rendered herein.

filed on October 19, 2018,[5] Debtor lists the Property as having a value of $150,000.00 as of the Petition Date. Debtor's Chapter 13 plan[6] ("Plan"), which was confirmed on February 6, 2019, provides that Debtor will engage in loss mitigation efforts with Movant according to the applicable guidelines or procedures of the Judge previously assigned to this case.[7] Specifically, the Plan states: "In the event that (1) the [loss mitigation/mortgage modification ("LM/MM")] request (and any necessary documentation) is not submitted or is denied or (2) the Debtor(s) fail to timely make any required Trial Plan Payments, the Mortgage Creditor may, after 14 days' written notice to the Debtor(s), Debtor(s)' Counsel, and the Trustee, submit an affidavit and [proposed] order seeking relief from stay. *However, the Mortgage Creditor may not obtain relief until its final consideration of LM/MM is concluded and reported to the Debtor(s) and Debtor(s)' Counsel.*" See Plan at § 8.1(b) (emphasis added). Debtor's loss mitigation efforts have been unsuccessful in this case, and Debtor has not entered into a loan modification with Movant.

Based upon Debtor's failure to make post-petition payments on the note and mortgage, Movant filed a motion for relief from the automatic stay on April 29, 2021. After a hearing,[8] which Debtor did not personally attend,[9] the Court entered an order on October 21, 2021, granting Movant relief from stay ("Stay Relief Order"). Debtor filed a motion seeking reconsideration of the Stay Relief Order on November 8, 2021. After a hearing, the Court vacated the Stay Relief Order, finding that Movant had not properly considered Debtor for all loss mitigation options available under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act (15 U.S.C.

---

[5] ECF No. 25.
[6] ECF No. 30.
[7] The Honorable John E. Waites was originally assigned to this case, and, upon his retirement, the case was reassigned to the undersigned on August 4, 2022.
[8] After three continuances, the hearing was held on October 21, 2021.
[9] Debtor's former counsel appeared and presented Debtor's arguments in opposition to the Motion.

2

§ 9056) or the Federal Housing Administration's ("FHA") default servicing guidelines, and denied Movant's motion for relief from stay without prejudice.[10]

The parties again engaged in loss mitigation efforts but were unable to reach an agreement to modify the mortgage. Beginning in March of 2022, Movant's predecessor-in-interest, PHH Mortgage Corp. ("PHH"), and later Movant, provided forbearance relief to Debtor from March 1, 2022 through September 1, 2022.[11] On September 22, 2022, Debtor filed a motion to incur debt, seeking, among other things, authorization to incur debt and/or obtain credit to refinance the mortgage loan and pay off Movant. On October 14, 2022, Movant filed a Notice of Forbearance Plan, extending Debtor's forbearance period until December 1, 2022, but Debtor objected to this Notice, arguing that the unrequested forbearance was hampering her efforts to refinance her mortgage. Debtor's objection was resolved by Movant's agreement to cancel the last forbearance. On November 4, 2022, the Court granted Debtor's motion to incur debt and entered an order authorizing Debtor to incur debt to refinance the mortgage loan and requiring Movant to provide Debtor with certain information regarding her account.

In response to the Court's November 4, 2022 order, Movant filed a Notice on November 30, 2022, which provided a payoff quote, payment history, and other information required by the order. Debtor objected to the Notice, raising concerns regarding the accuracy of the payoff information provided by Movant and also attempting to raise other claims, including fraud,

---

[10] ECF No. 115.
[11] PHH filed a Notice of Temporary Forbearance on March 25, 2022, providing Debtor with CARES Act forbearance relief from March 1, 2022 through May 31, 2022. On June 17, 2022, PHH filed a second Notice of Temporary Forbearance, providing Debtor with CARES Act forbearance relief from June 1, 2022, through August 31, 2022. Thereafter, the mortgage loan was transferred to Movant, and Movant filed a Notice of Forbearance Plan, providing Debtor with COVID-19 forbearance relief from July 1, 2022 through September 1, 2022. As the Court previously noted in its Order entered on February 16, 2023, the exact dates of the forbearance period provided to Debtor remain unclear, but Movant's representative testified at a prior hearing that the forbearance period began on March 1, 2022 and terminated on November 4, 2022, when Debtor rejected the final forbearance provided by Movant in the Notice of Forbearance Plan filed on October 14, 2022. *See* Order at ECF No. 161, p. 14.

discrimination, and civil conspiracy as well as claims that Movant improperly charged fees to her account in violation of the CARES Act. The Court held a hearing on the objection on December 14, 2022, which was continued so that Movant could provide a witness to answer Debtor's questions regarding her account. Prior to the continued hearing, Movant filed Notices attaching additional account information regarding Debtor's mortgage. On January 4, 2023, Movant filed a further document indicating that the payoff amount as of January 1, 2023 was $193,121.01. Following a final hearing on February 2, 2023, the Court entered an Order on February 16, 2023 ("February Order"),[12] overruling Debtor's Objection to Creditor's Notice and denying Debtor's requests for relief, finding that the Debtor had failed to prove any inaccuracies in the payoff information provided by Movant but holding that $670.00 in fees asserted as part of the payoff were nonrecoverable. Debtor filed a motion to reconsider the February Order, which was denied by order entered on March 10, 2023 ("March Order"). Debtor appealed the March Order to the United States District Court (D.S.C.) ("District Court"), and that appeal remains pending as of the date of this Order.

On March 16, 2023, Movant filed the Motion seeking relief from the automatic stay for "cause" based upon a lack of adequate protection of its interest in the Property, so that it can proceed with foreclosure of its security interest in the Property and pursue any remedies available under state law to recover and liquidate its collateral.[13] In the Motion, Movant argues that the payoff amount as of March 1, 2023 was $194,198.33, and that based on the value of the Property as stated in Debtor's Schedules of $150,000.00, no equity exists in the Property. Movant also

---

[12] ECF No. 161.

[13] It is not clear from the Motion under which subsection of § 362(d) Movant sought relief. Upon questioning by the Court at the hearing, Movant's counsel stated that Movant sought relief under § 362(d)(1). To the extent Movant also sought relief under § 362(d)(2), which provides that relief shall be granted if it is demonstrated that the debtor does not have an equity in such property and that such property is not necessary to an effective reorganization, the Court similarly denies the Motion based upon Movant's failure to meet its burden of proof to demonstrate that Debtor does not have equity in the Property.

4

argues that loss mitigation efforts between Movant's predecessor and Debtor were unsuccessful and, because the Plan does not contemplate the curing of the prepetition arrearage, Movant lacks adequate protection of its interest in the Property. Movant did not present any witnesses at the hearing but presented five exhibits, and Debtor objected to their admissibility.[14] The parties do not dispute that the Property is presently insured and taxes are current.[15]

Debtor filed an objection to the relief sought in the Motion as well as to the Certification of Facts. Many of the objections raised revolve around issues previously decided in the February Order. As to the issue of equity in the Property, Debtor argued that a Comparative Market Analysis she received in December 2021 and admitted into evidence suggested that the Property's value was $279,000.00—as opposed to the prior value reflected on her Schedules of $150,000.00—thus creating an equity cushion of approximately $80,000.00. Debtor also argued that the U.S. Department of Housing and Urban Development had issued further guidance on loss mitigation in February of 2023 which provided borrowers additional post-COVID loss mitigation options. At the hearing, Debtor also introduced into evidence a total of 10 exhibits. Many were portions of various emails or notes that she had made regarding various documents. Movant did not object to their introduction into the record, and the Court admitted them, acknowledging that it would give them the proper weight in deciding the Motion.

To accommodate the matter on the Court's calendar, the Court entered an order on March 20, 2023, continuing the hearing on the Motion to April 26, 2023, indicating that compelling circumstances justified an extension of the automatic stay beyond the 30-day period set forth in 11 U.S.C. § 362(e)(1), and ordering that the automatic stay would remain in effect until the Court entered an order on the Motion. At the hearing on the Motion, the Court further found good cause

---

[14] Two of the exhibits were pleadings filed with the Court, and the Court took judicial notice of them.
[15] Taxes and insurance on the Property are escrowed and paid by the Movant.

to keep the automatic stay in effect until the entry of an order on the Motion under 11 U.S.C. § 362(g)(2) for the reasons stated on the record.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G); accordingly, this Court may enter a final order.

The filing of a bankruptcy petition "operates as a stay, applicable to all entities, of" a number of actions, including "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a). Movant seeks relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), which provides that the Court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest…." "The party requesting relief has the initial burden of proving cause exists for relief from the automatic stay, including lack of adequate protection, and lack of equity in the property." *In re Morgan*, 630 B.R. 476, 479 (Bankr. D.S.C. 2021) (citing 11 U.S.C. § 362(g); *In re Toomer*, No. 10-07273-JW, 2011 WL 8899488, at *2 (Bankr. D.S.C. Oct. 5, 2011)). To establish a *prima facie* case for relief, Movant must demonstrate that Debtor owes a debt to it, that it possesses a valid security interest securing the debt, and that the collateral securing the debt is declining in value. *In re Jeff Benfield Nursery, Inc.*, 565 B.R. 603, 610 (Bankr. W.D.N.C. 2017). "Once the creditor makes a *prima facie* case, the burden shifts to the debtor on

all other issues." *Morgan*, 630 B.R. at 479 (quoting *In re Garcia*, 584 B.R. 483, 488-89 (Bankr. S.D.N.Y. 2018)).

The Court determines whether a creditor's interest in the property is adequately protected on a case-by-case basis. *R&J Contractor Servs., LLC v. Vancamp*, No. RDB-22-2101, 2023 WL 2811570, at *3 (D. Md. Apr. 6, 2023) (citing *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992)). While "adequate protection" is not defined in the Bankruptcy Code, 11 U.S.C. § 361 provides that adequate protection for purposes of Section 362 may be provided by (1) "a cash payment or periodic cash payments" to the creditor to the extent that the Section 362 stay results in a decrease in value of the creditor's interest; (2) providing an additional or replacement lien to the creditor to the extent that the Section 362 stay results in a decrease in value of the creditor's interest; or (3) "granting such other relief…as will result in the realization by [the creditor] of the indubitable equivalent of [the creditor's] interest in such property." "The absence of a definition of adequate protection in the Code coupled with the 'flexibility' of § 361(3) suggests that adequate protection may be shown in a variety of ways." *Suntrust Bank v. Den-Mark Constr., Inc.*, 406 B.R. 683, 696 (E.D.N.C. 2009) (quoting *In re Reading Tube Indus.*, 72 B.R. 329, 333 (Bankr. E.D. Pa. 1987)). "[A] judicial determination" of adequate protection "is a question of fact rooted in measurements of value and the credibility of witnesses." *Vancamp*, 2023 WL 2811570, at *5 (quoting *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986)).

**A.    Movant Has not Met Its Burden of Proof Regarding the Lack of Equity in the Property**

Movant asserts that it is not adequately protected because no equity exists in the Property, past loss mitigation efforts have been unsuccessful, Debtor has not entered into a loan modification to date, Debtor has failed to make the necessary post-petition payments, and Debtor has not provided for the curing of the pre-petition arrearage in the Plan. Movant did not present any

evidence of the current value of the Property, citing only Debtor's assertion in her Schedules, filed nearly five years ago, that the Property had a value of $150,000.00. "Establishing the value of collateral is essential to a determination of whether a creditor is entitled to relief pursuant to § 362(d)(1) and (2). Specifically, the value of collateral is critical to (a) whether the debtor has equity in the property and (b) whether that equity is sufficient to adequately protect the creditor." *In re M.C. Pipe, Inc.*, No. 11-05256-8-JRL, 2011 WL 5902604, at *2 (Bankr. E.D.N.C. Oct. 7, 2011). The determination of value is made in conjunction with any hearing on the disposition or use of the property at issue. 11 U.S.C. § 506(a)(1) (providing that the value of a creditor's secured interest in property "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."); *see also In re Coates*, 180 B.R. 110, 120 (Bankr. D.S.C. 1995) (finding that collateral securing a creditor's claim should be valued as of the date of the hearing on the motion for relief from stay). Accordingly, Debtor's valuation of the Property in the Schedules from 2018 has little probative value and would not be determinative of the value of the Property at the time of the hearing on the Motion.

Debtor disputes Movant's claim that there is no equity in the Property to provide Movant with adequate protection.[16] Debtor testified that she believed the Property was worth $279,000.00.

---

[16] Debtor further argues that Movant is adequately protected by its Private Mortgage Insurance ("PMI") on the Property. The Court is not convinced that this argument has merit. Private mortgage insurance is intended to protect the creditor from loss in the event of a borrower's default – it generally insures a mortgage holder for losses above and beyond the value of its collateral upon foreclosure. *See In re Lanois*, 516 B.R. 680, 680 n.1 (Bankr. D.R.I. 2014). "When the property is to be retained by a debtor under a plan, the value of the property is not the hypothetical amount the lender would receive on its mortgage claim through PMI coverage in the event of a borrower's default, but rather, the fair market value of the property itself at the time of confirmation." *Id.* at 684; *see also Lomas Mortg. USA v. Fischer (In re Fischer)*, 136 B.R. 819, 825 (D. Alaska 1992) (noting that "[t]he value of the property should be the same whether being analyzed under § 506 or § 361. Therefore, the value of creditor's interest that must be adequately protected [for purposes of § 361] does not include the value of the mortgage insurance."); *In re Lopez*, 75 B.R. 961, 962 (Bankr. E.D. Pa. 1987) (rejecting the contention that the sum which the mortgagee would receive pursuant to mortgage insurance upon foreclosure is the proper valuation of the property under § 506 where the debtor intends to retain the property under a Chapter 13 plan, instead utilizing the property's fair market value), *aff'd sub nom. Lopez v. Beneficial Mut. Sav. Bank*, 82 B.R. 712 (E.D. Pa. 1988). In light of the Court's finding that Movant has failed to

She further testified that she has maintained the Property during the case by having it painted, removing unsightly items from the Property, and making necessary repairs. To support her valuation of $279,000.00, Debtor presented a "Comparative Market Analysis" prepared by a real estate agent, dated December 6, 2021, which suggested a list price in that amount. The Comparative Market Analysis was admitted into evidence without objection. As previously recognized in its February 4, 2022 order vacating the Stay Relief Order, the Court observes that market values for real estate in Charleston and its surrounding areas have increased significantly since 2018 as a result of a demand for housing which exceeds the supply. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it … is generally known within the trial court's territorial jurisdiction."); *In re Boyer*, 367 B.R. 34, 41 (Bankr. D. Conn. 2007) (bankruptcy court took judicial notice that the real estate market experienced a steep downturn in late 1989/early 1990). While this evidence does not conclusively establish the value of the Property as of the date of the hearing, the Court finds that it supports Debtor's assertion that the value of the Property has increased since the filing of the bankruptcy case.

Movant asserts that the amount of the debt owed by Debtor and secured by the Property is $194,198.33.[17] Under § 362(g), Movant has the burden of proof on the issue of Debtor's equity in the Property. Movant has not presented any evidence—aside from Debtor's valuation of the Property as set forth in her Schedules, which she now claims has significantly increased over the years— indicating that the value of the Property is less than the amount of its debt. Upon questioning from the Court, Movant admitted that it had no evidence that the Property was

---

meet its burden of proof to demonstrate "cause" for relief from stay, it is unnecessary for the Court to decide this issue at this time.

[17] While the Court cannot conclude with certainty the accuracy of that exact figure, it previously found that to be the debt amount in its February Order.

9

declining in value or at risk of declining in value. The only relevant evidence of the Property's value before the Court is Debtor's testimony of her opinion of value and the Comparative Market Analysis, which indicate the value of the Property likely exceeds $194,198.33, thus creating an equity cushion. *See In re Smith*, 632 B.R. 297, 299 (Bankr. D.S.C. 2021) ("The law is clear that an owner is competent to give her opinion of the value of her own property, as provided by the Federal Rule of Evidence 701.") (quoting Barry Russell, Bankr. Evid. Manual, § 701:2 (2020-21 ed.)); *see also Justice v. Pennzoil Co.*, 598 F.2d 1339, 1344 (4th Cir. 1979) (finding that "a landowner's opinion concerning the value of his land is certainly admissible"); *Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981) (stating that "a property owner, who is familiar with his property and its value, may give his estimate as to its value or the damage inflicted upon it even though he is not otherwise an expert"). "Under the 'equity cushion' theory, if a debtor has equity in a property sufficient to shield the creditor from either the declining value of the collateral or an increase in the claim from accrual of interest or expenses, then the creditor is adequately protected." *Vancamp*, 2023 WL 2811570, at *4 (quoting *In re James River Assocs.*, 148 B.R. 790, 796 (E.D. Va. 1992)). Based on the evidence presented, the Court finds that Movant has failed to meet its burden of proof to establish that it is not adequately protected because there is no equity in the Property.[18]

### B. Debtor's Eligibility to Be Considered for Post-Covid Recovery Modifications Renders the Motion Premature

---

[18] Movant presented into evidence the Borrower Assistance Packet sent to Debtor (Exhibit 3), the Debtor's Payment History (Exhibit 4) and a Reinstatement Quote (Exhibit 5). Debtor objected to the admission of these exhibits and the Court took the admission of these documents under advisement. The only evidence presented by Movant that was considered by the Court in connection with this Order was the Payment History, specifically as evidence demonstrating that Debtor had consistently made monthly payments to Movant since March of 2022. Debtor stated at the hearing that she had consistently made monthly payments to Movant over the past year. Accordingly, the Court will admit Exhibit 4 over Debtor's objection. The Court sustains Debtor's objection to Exhibits 3 and 5, finding that these Exhibits are not relevant to the determination of the Motion, although consideration of these documents would not have had any effect on the Court's findings in this matter.

Movant further asserts that Debtor has failed to make necessary payments and has not provided for payment of the pre-petition arrearage in the Plan. The payment history Movant presented as evidence indicates that Debtor has consistently made monthly payments since the beginning of the COVID-19 forbearance in March of 2022. While the Court acknowledges the delay in Debtor's curing of the arrearages on the loan and the fact that post-petition payments remain unpaid, Debtor's Plan provides that Debtor will pursue mortgage modification with the Movant and that upon final denial of a mortgage modification request or Debtor's failure to submit a request and the necessary documentation, Movant may seek relief from stay. Debtor has sought mortgage modification/loss mitigation options in the past but has not agreed to the terms proposed by Movant's predecessor. The Plan does not appear to provide for the circumstance where Debtor refuses to agree to a modification of her mortgage as has been the case here. It does, however, provide that Movant "may not obtain relief until its *final* consideration of LM/MM is concluded and reported to the Debtor(s)."

In her Objection to Certification of Statement of Facts, Debtor argued that the U.S. Department of Housing and Urban Development Mortgagee Letter 2023-03 issued on February 13, 2023 ("Mortgagee Letter 2023-03"),[19] which provides additional COVID-19 Recovery Home Retention Options and loss mitigation options, requires Movant to review Debtor's account for further options as outlined therein. As indicated in its Statement of Dispute and by its counsel at the hearing, Movant admits that Debtor remains eligible to be considered for a Post-Covid Recovery Modification upon request and appeared to indicate that there was no set deadline by which the application had to be submitted. At the hearing, Debtor admitted that she received the application form and indicated that while she has yet to return it as she is awaiting certain

---

[19] U.S. Dep't of Hous. and Urb. Dev., Mortgagee Letter 2023-03 (Feb. 13, 2023), https://www.hud.gov/sites/dfiles/OCHCO/documents/2023-03hsgml.pdf.

11

information required by the form, she did intend to submit the application to be considered for further modification options. Accordingly, under the terms of the confirmed Plan, it appears that this Motion is premature. As the Court previously concluded in granting Debtor's motion to reconsider the prior order for relief from stay, because creditor's counsel had acknowledged that Debtor remained eligible to be considered for forbearance and loan modification but had not been considered for all available loss mitigation options available under the CARES Act and the FHA's default servicing guidelines, the Court denied the motion for relief from stay without prejudice.

To be clear, the Court is not suggesting that a debtor who is seeking loss mitigation/mortgage modification can continue to reject all proposed modified terms offered by a lender while continuing to shield itself under the protection of the automatic stay. Nor is it suggesting that under no circumstances will the Court grant relief from stay when a confirmed plan contemplates that the debtor and the mortgagee will engage in loss mitigation/mortgage modification, the parties are unable to agree to the terms of a mortgage modification, but an equity cushion exists in the property. Under the proper circumstances, the delay caused in curing the arrearages and failing to catch up on the post-petition payments may warrant relief pursuant to § 362(d). However, under the facts of the case and the record before it, the Court finds that relief from stay cannot be granted at this time.

The Court further notes that during this case, Debtor has received the benefit of the automatic stay and other protections provided by CARES Act relief, which have shielded her home from foreclosure for several years, without addressing her pre-petition mortgage arrearage through monthly payments or a loan modification. If Debtor reaches the conclusion of her Plan payment obligations at the end of 2023 without addressing the delinquency and her bankruptcy case concludes, the Court observes that the debt owed to Movant will most likely not be discharged and

Debtor will be obligated to address her significant arrearage after bankruptcy and after the protections of the automatic stay expire. Therefore, while Debtor temporarily continues to avoid relief from the automatic stay, the long-term mortgage issues remain unresolved for Debtor. Moreover, while Debtor has acknowledged her desire to apply for the options offered under the Mortgagee Letter 2023-03, and Movant has acknowledged her right to do so, Debtor must act expeditiously and engage in such negotiations in good faith without causing unnecessary delay.

### C. Additional Relief Sought In the Objection is Denied

In her Objection, Debtor raised additional arguments that the forbearance she received did not comply with the CARES Act forbearance provisions set forth in 15 U.S.C. § 9056(b). She further asserts that certain of the attorney's fees she incurred when she was represented in this case could have been avoided if Movant had complied with the CARES Act. She also asserts that Movant failed to validate the accuracy of its debt in violation of the Fair Debt Collection Practices Act and that Movant intentionally filed false forbearance notices in violation of S.C. Code Ann. § 37-5-302 (Consumer Protection Code).[20] Not only are these issues not pertinent to the matter currently under consideration, but the Court has already determined those issues in the February Order and denied Debtor's motion to reconsider that order, which order denying reconsideration is now on appeal to the District Court.[21] Those prior conclusions not only preclude relitigating these issues but, given the pending appeal in the District Court, the Court also is divested of jurisdiction to hear these particular issues. *See Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011) ("As a general rule, the filing of an appeal 'confers jurisdiction on the [appellate court] and divests the [lower] court of its control over those aspects of the case involved in the

---

[20] S.C. Code Ann. § 37-5-302 provides for criminal penalties for a person who willfully and knowingly gives false or inaccurate information or fails to provide information which is required to be disclosed under the Federal Truth in Lending Act. This section does not appear to provide a private cause of action.
[21] ECF No. 161, p. 13-16.

13

appeal.'" (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L.Ed.2d 225 (1982))). Accordingly, the Court finds that Debtor's additional requests for relief in her Objection must be denied.

## CONCLUSION

For the foregoing reasons,

**IT IS, THEREFORE, ORDERED** that the Motion for Relief from Stay filed by U.S. Bank National Association, not in its Individual Capacity but Solely as Trustee for RMTP Trust, Series 2021 BKM-TT-V is denied without prejudice to Movant's right to renew the Motion at the appropriate time. All other requests for relief included in Debtor's Objection are denied.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**05/05/2023**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 05/05/2023